IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LOMA LINDA UNIVERSITY )<br>KIDNEY CENTER )<br>11375 Anderson Street )<br>Loma Linda, CA 92354 )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>)<br>SYLVIA M. BURWELL, IN HER )<br>OFFICIAL CAPACITY AS SECRETARY )<br>OF HEALTH AND HUMAN SERVICES )<br>200 Independence Avenue, S.W. )<br>Washington, D.C. 20201 )<br>)<br>Defendant, )<br>) | Civil Action No. ____ |

## COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

## I. JURISDICTION AND VENUE

1. This is a civil action brought to obtain judicial review of a final

    decision rendered by the Provider Reimbursement Review Board

    (PRRB), Centers for Medicare and Medicaid Services, acting as a

    component of the United States Department of Health And Human

    Services ("HHS").

2.  This action arises under Title XVIII of the Social Security Act, as amended (42  U.SC. §1395 et. seq.), hereinafter referred to as the "Medicare Act" or the "Act."

3.  This action seeks review of an adverse decision from the Provider Reimbursement Review Board dated September 1, 2015 in Case No. 01-2872R, Decision No. 2015-D19, Loma Linda University Kidney Center vs. Noridian Healthcare Solutions, LLC.

4.  This Court has jurisdiction under 42 U.S.C. §1395oo(f).  Venue lies in this judicial district pursuant to 42 U.S.C. §1395oo(f).  This Court has authority to grant the relief requested under 42 U.S.C. §1395oo(f).

5.  Plaintiff has exhausted all administrative remedies under federal law.

## II. PARTIES

6.  The Plaintiff is Loma Linda University Kidney Center ("LLKC"), Provider No. 05-2550.  LLKC is a non-profit free-standing renal dialysis facility located in Loma Linda, California.

7.  At all times relevant hereto, Plaintiff has been certified as a provider of services under the federal Medicare program.

8.  Defendant, Sylvia M. Burwell, Secretary of the Department of Health and Human Services ("Secretary"), or her predecessors in office, is the

federal officer responsible for the administration of the Medicare program.  Defendant Burwell is sued in her official capacity.

## III. BACKGROUND

9.  Title XVIII of the Social Security Act, Pub. L. No. 89-97, 79 Stat. 291, as amended by 42 U.S.C. §§1395 et. seq. ("the Medicare program"), establishes a program of medical benefits for persons age 65 or older, and also for persons under age 65 who are disabled. Medicare also covers individuals who have not reached age 65 who are suffering from "end-stage renal disease" ("ESRD").

10. Kidney dialysis is a life saving treatment for persons with end-stage renal disease.  Medicare covers dialysis treatments in various settings: hospital inpatient, hospital outpatient, independent renal dialysis facility, or the patient's home.  Generally however, these treatments are performed on an outpatient basis.

11. All ESRD facilities, whether hospital-based or free-standing, are paid by Medicare on the basis of prospective reimbursement.  Each facility receives a payment rate per treatment that is adjusted to account for geographic differences in the costs of labor.  A facility may seek an exception to its payment rate if the facility's outpatient maintenance dialysis treatments involve atypically intense dialysis services.  The

criteria for atypical patient mix are further defined in 42 CFR §

413.180 et. seq.

12. Facilities seeking exceptions must submit their requests to fiscal

intermediaries, which acts as the agent of the Secretary for purposes

of processing said requests.  The Intermediary makes a preliminary

recommendation as to whether such request should be granted, and

forwards the request, along with the preliminary recommendation, to

the Center for Medicare and Medicaid Services ("CMS").  See

Provider Reimbursement Manual ("PRM") §2723.  CMS then makes

the determination as to whether such request should be approved or

denied, and send a copy of that determination to the Intermediary. See

PRM §2724.  The Intermediary then notifies the facility as to the

determination rendered by CMS.

13. Pursuant to 42 U.S.C. §1395rr(b)(7), an application for an exception

"*shall be deemed to be approved unless the Secretary disapproves it*

*by not later than 60 working days after the date the application is*

*filed.*"

14. Denials of requests for exceptions to the composite payment rate may

be appealed to the Provider Reimbursement Review Board ("PRRB")

if the amount in controversy involves at least $10,000.  The PRRB is

the entity designated by Section 1878 of the Social Security Act to

hear appeals from providers who are dissatisfied with a determination

of the Secretary. 42 U.S.C. §1395oo.

15. In the case of an appeal to the PRRB concerning a payment exception

request denial, the Board may review whether the denial was

appropriate under the existing rules.  A request for review by the

PRRB must be filed within 180 days of the date of the decision on

which review is sought.

16. Decisions of the Board are subject to review by the Administrator.

The Administrator's decision constitutes final agency action that is

subject to judicial review under 42 U.S.C. §1395oo(f).

### IV.  FACTS RELATING TO PLAINTIFF

17. Plaintiff submitted an exception request to the prospective payment

rate for dialysis services to United Government Services, LLC

("Intermediary") on August 28, 2000.

18. The Plaintiff sought an additional $51.64 for each outpatient

hemodialysis treatment, and an additional $49.43 for each peritoneal

dialysis treatment.  Had the exception request been approved, the

amount paid by the Secretary for each outpatient hemodialysis

treatment would have been $186.59, and the amount paid for each
peritoneal dialysis treatment would have been $184.38

19. Plaintiff's request was based upon atypical service intensity, and the
resulting additional costs.

20. Plaintiff claim of atypical service intensity with respect to its
hemodialysis patients was justified by the following: 45.32% were
diabetic, compared to a national average of 34.44%.  Further, 78.3%
were hypertensive, compared to a national average of 24.76%.
Further, 38.92% were over the age of 64, compared to a national
average of 28.88%.  Further, 0.49% were below the age of 20,
compared to a national average of 0.31%. Further, inpatient admits
equaled 32.03%, compared to a national average of 27.31%.

21. Plaintiff claim of atypical service intensity with respect to its
peritoneal dialysis patients was justified by the following:  54.72%
were hypertensive, compared to a national average of 24.76%.
Further, 15.09% were over the age of 64, compared to a national
average of 2.61%.  Further, 33.96% were below the age of 20,
compared to a national average of 0.24%.

22. By letter dated September 19, 2000 to CMS, the Intermediary
recommended partial approval of the exception in advising that the

following rates should be paid to Plaintiff: $181.52 for outpatient hemodialysis (or an increase in the amount of $46.57), and $179.55 for peritoneal dialysis (or an increase in the amount of $49.43).

23. By letter dated November 15, 2000, CMS advised the Intermediary that it had decided to deny the exception request in its entirety. CMS asserted that Plaintiff failed to satisfy all of the criteria for an atypical services exception under 42 C.F.R §413.180 et. seq.

24. The CMS letter dated November 15, 2000 was not sent to the Intermediary until after the expiration of the 60 working day prescribed by 42 U.S.C. §1395rr(b)(7).

25. The CMS denial letter dated November 15, 2000 was not indexed and made available for public inspection in the FOIA Reading Room located in CMS's library - 2nd Floor, Central Building, 7500 Security Boulevard in Baltimore, Md., or in any other CMS FOIA reading room.  The CMS denial letter dated November 15, 2000 was not indexed and made available for public inspection in any electronic reading room.

26. CMS maintains a log reflecting the date upon which significant actions occur in connection with the processing of renal dialysis exception requests.

27. By letter dated November 29, 2000, the Intermediary advised Plaintiff that CMS had denied the exception request.

28. On April 16, 2001, Plaintiff timely filed an appeal to the Provider Reimbursement Review Board ("PRRB").

29. On June 11, 2002, Plaintiff submitted a Document Production Request to the fiscal intermediary, and to CMS, seeking *"all documents, including, but not limited to, all worksheets, computer spreadsheets, and memo's associated with, or attached to, or referencing, the above referenced letter from Mr. Joseph Logue of HCFA, dated November 15, 2000."*

30. On June 25, 2002, the fiscal intermediary, writing on CMS stationary and on behalf of CMS, stated as follows:   *"Regarding the worksheets, computer spreadsheets, and memo's associated to CMS 11/15/2000 letter, at the time of this response the applicable files containing this information has not been located. Upon obtaining the documents, this will be forwarded to you."* The fiscal intermediary never supplemented this response.

31. A hearing was conducted before the Provider Reimbursement Review Board on June 10, 2004. Loma Linda presented evidence at the

hearing in support of its argument that it met the substantive criteria for an atypical services exception.

32. Plaintiff submitted a post hearing brief on August 5, 2004. The post-hearing brief submitted by LLKC framed three separate issues to be decided by the PRRB: a. Did LLKC serve an atypically acute patient population? b. Did LLKC incur increased costs due to patient atypicality? c. Did CMS process the exception request within the 60 working day period?

33. On September 19, 2005, the PRRB issued a subpoena duces tecum to the Intermediary requesting the envelope containing the CMS November 15, 2000 letter, as well as any other evidence substantiating the exact date on which such letter was mailed by CMS to the Intermediary. On October 4, 2005, the Intermediary responded that it was unable to find the November 15, 2000 letter. The Intermediary was unable to provide any other evidence substantiating the date upon which the denial letter was mailed by CMS to the Intermediary.

34. The November 15, 2000 letter may have been faxed to the intermediary, instead of mailed.

35. On July 27, 2006, the PRRB issued a decision granting Plaintiff's appeal. See PRRB Decision No. 2006-D40.  The PRRB held that the

CMS determination was sent to the Intermediary after the 60 working day limit provided by 42 U.S.C. §1395rr(b)(7).  The PRRB concluded that the exception request was automatically deemed approved based upon the failure to notify the Plaintiff of the denial within the 60 working day period.  The PRRB further held that the issue of whether Plaintiff was entitled to additional reimbursement due to atypical service intensity was moot, based upon its decision that the exception request was automatically deemed approved.

36. By letter dated August 9, 2006, the Administrator advised the parties that it had decided to review the PRRB decision.  The Administrator stated that the issue under consideration is *"...whether the Board's decision is in keeping with the pertinent laws, regulations, and other criteria cited by the Board and by the parties in their comments."*

37. By decision dated September 12, 2006, the Administrator reversed the PRRB. The Administrator held that the exception request was timely disapproved. The Administrator did not make any findings concerning whether Loma Linda satisfied the criteria for an atypical services exception.

38. The Administrator concluded that the "*November 15 2000 disapproval of Providers exception request satisfied the statutory*

*requirements in that it was made within 60 working days after the request was filed with Providers Intermediary.*" Significantly, the CMS Administrator's decision never disturbed the PRRB's finding of fact that the "*CMS determination was sent to the Intermediary after the 60 working day deadline.*" Rather, the CMS Administrator focused on its finding that the decision "*was made*" within the 60 working day period.

39. Pursuant to 42 U.S.C. §1395oo, Providers may obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received.

40. On November 13, 2006, plaintiff filed its complaint in this Court, Case No. 1:06-cv-01926-TFH-DAR. Plaintiff's complaint alleged that the Secretary maintains logs reflecting the dates upon which significant actions occur in connection with the processing of renal dialysis exception requests. See Complaint, LLKC at ¶ 24. Defendant's answer admitted that such logs exist. See Answer, LLKC at ¶24.

41. Loma Linda's complaint alleged that the Secretary failed to comply with the 60 working day rule contained in 42 U.S.C. §1395rr(b)(7). Alternatively, Loma Linda argued that the CMS Administrator failed to evaluate the substantive merits of its exception request. The merits issue would be rendered moot if the Court were to hold that the Secretary failed to comply with the 60 working day rule, because the exception request would be "deemed approved" without regard to its merits.

42. On February 27, 2007, Plaintiff informally requested that the Secretary voluntarily produce a copy of the logs referred to in the Answer, and which should have been previously produced in response to the PRRB subpoena, as well as the Document Production Request dated June 11, 2002.  By email dated March 23, 2007, the Secretary's counsel declined to produce a copy of such logs. The agency stated that such requests are inappropriate in APA record review cases.

43. On April 4, 2007, plaintiff submitted to defendant via overnight mail a Document Production Request seeking a copy of any logs, referred to in the defendant's Answers, reflecting the date upon which the denial letter dated November 15, 2000 was signed, and the date upon which such letter was actually mailed to the intermediary.

44. By letter dated April 26, 2007, defendant declined to produce the requested documents.  The basis for its refusal was that such discovery was improper in record review proceedings under the APA.

45. On November 17, 2008, plaintiff filed a motion to compel the production of these documents. This motion was denied by minute order dated January 9, 2009.

46. On March 17, 2009, Magistrate Judge Robinson issued a Report and Recommendation (R&R) in which she found that remand is warranted because of an ambiguity in the administrative record.  Judge Robinson found that on the one hand, the Board concluded that the exception request was deemed approved because of the failure of the intermediary to notify the *provider* within the 60-day working period of the disapproval.  On the other hand, the Board held that the exception request was deemed approved because the determination was sent to the *intermediary* after the 60-day period.  The Magistrate Judge further stated that the Administrator's decision was "*notably silent*" with respect to the Board's finding that CMS sent the denial letter to the intermediary after the 60 day period.  ECF 46, at p. 19.

47. The Magistrate Judge further recommended remand because the CMS Administrator failed to consider the substantive merits of the exception request. *Id*., at 20-22, 1:06-cv-01926-TFH-DAR.

48. By order dated January 28, 2011, the district court granted in part defendant's motion for summary judgment by ruling that the Secretary timely disapproved the exception request.  The district court further granted in part plaintiff's motion for summary judgment in holding that the CMS Administrator improperly failed to consider the substantive merits of the request.  The district court remanded the matter back to the Secretary for further consideration of the substantive merits of the exception request.  Plaintiff appealed the district court order dated January 28, 2011 through the filing of a Notice of Appeal on February 28, 2011.

49. On July 21, 2011, the D.C. Circuit dismissed the appeal on the basis that the district court's order was not immediately appealable because a remand had been ordered.  The D.C. Circuit stated that the district court's order may be appealed after the remand proceedings are completed.

50. On November 29, 2011, the CMS Administrator remanded this matter to the PRRB for further proceedings.  The remand order required the PRRB to issue a decision on the merits of the exception request.

51. On February 3, 2012, plaintiff filed another subpoena request with the PRRB for production of logs or any other documents indicating the date upon which the exception request was signed, and the date upon which it was mailed to the intermediary. The PRRB denied this request by letter dated February 17, 2012.

52. On June 12, 2012, plaintiff filed a final position paper with the Board arguing that the exception request must be deemed approved because it was not timely disapproved with the 60-day period.  This position paper also argued that the exception request should be granted because of the additional costs incurred by plaintiff in providing atypically intense dialysis services.

53. On August 28, 2012, a hearing was conducted before the PRRB on this case.

54. The plaintiff's request for an exception was denied by the decision of the PRRB dated September 1, 2015.  The PRRB did not address the plaintiff's argument that the exception request should be deemed approved because it was not disapproved within 60 days. By letter

dated October 7, 2015, CMS advised plaintiff that it would not further review the decision of the PRRB denying the exception request. As such, the PRRB's September 1, 2015 decision is the final agency decision in this matter.

## COUNT I

55. Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 54 of the Complaint as though fully set forth herein.

56. The PRRB's finding in its decision dated July 27, 2006 (2006-D40) that the denial letter was sent to the intermediary after the 60 day period had already expired remains undisturbed either by the Administrator's review dated September 12, 2006, or by the PRRB's September 1, 2015 decision on remand. The exception request must be deemed approved pursuant to 42 U.S.C. §1395rr(b)(7), because CMS did not communicate its disapproval to the intermediary within the required 60-day period, and because the intermediary did not communicate its approval to the plaintiff within the required 60-day period.

## COUNT II

57. Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 56 of the Complaint as though fully set forth herein.

58. Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. §

552(a)(2)(A), the CMS denial letter dated November 15, 2000 was

required to be made available for public inspection.

59. The CMS denial letter dated November 15, 2000 was not indexed or

published in the publication known as CMS Rulings, which is

available on the agency's web site at

http://www.cms.hhs.gov/Rulings/CMSR/list.asp. Therefore, the denial

letter dated November 15, 2000 could not have been *"relied on"* or

*"used"* against Loma Linda until such time as the latter received

*"actual"* notice thereof.  5 U.S.C. § 552(a)(2)(ii).

60.  The transmittal letter notifying Loma Linda that its exception request

had been denied was dated after the expiration of the 60 working day

period. Therefore, the November 15, 2000 decision could not have

been *"used"* or *"relied upon"* until after the 60 day deadline.  The

August 28, 2000 exception request must therefore be deemed

approved pursuant to 42 U.S.C. §1395rr(b)(7).

COUNT III

61. Plaintiff hereby incorporates the allegations contained in paragraphs 1

through 60 of the Complaint as though fully set forth herein.

62. Pursuant to 42 CFR 405.1845(d), at least one of the Board members deciding the case must be a representative of providers.

63. None of the three Board members deciding this case was a representative of providers.

64. Accordingly, the Board's decision dated September 1, 2015 was invalid for lack of a quorum.

COUNT IV

65. Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 64 of the Complaint as though fully set forth herein.

66. Plaintiff satisfied the regulatory atypical service intensity exception requirements by virtue of (a) its atypical patient population; (b) its higher than average staff to patient ratio, (c) its higher than average number of hours per treatment, and (d) its use of more costly RN's as opposed to technicians.

67. CMS denied the plaintiff's exception request based on a determination that plaintiff did not adequately allocate time and cost to home training treatments.  However, allocation of time and cost to home training treatments would have had virtually no effect on the plaintiff's average hours per dialysis session.

68. Entitlement to an exception to the standard dialysis rates is based on projected estimated costs, as opposed to actual historical costs. Accordingly, any deficiencies in reporting historical costs are not a basis for denying exception relief.

69. The exception request clearly demonstrated that the atypical patient population served by plaintiff consumed atypically intense dialysis services. The Board's finding to the contrary is completely unsupported by record evidence.

70. CMS denied plaintiff's claim for additional supply costs based on the inaccurate and unfounded assumption that LLKC (a) re-used all dialyzers 20 times, and (b) each dialyzer type was used with equivalent frequency.

71. CMS had no reasonable basis for requiring atypical intervention time studies that satisfied the same periodic time sampling standards mandated for Medicare cost reports.

72. Plaintiff is entitled to its additional overhead costs since it demonstrated that its overhead costs directly resulted from its higher than average labor costs. The allocation of additional overhead to outpatient dialysis resulted from higher labor costs and was reasonably calculated pursuant to cost accounting protocols used in

Medicare cost reports.

73. CMS denied LLKC's exception request because of alleged unexplained total cost variances that brought into question the efficiency of service delivery at plaintiff's dialysis center.  Plaintiff's costs increases over a period of 8 years represented an annual average increase of 9%, which was within the order of magnitude of healthcare inflation during the applicable time period. The rationale for the use of a 9% projected cost increase, specifically with respect to labor costs, was fully explained in the exception request.

74. For all of the foregoing reasons, CMS denial of the exception request was arbitrary and capricious, and not based upon substantial evidence.

COUNT V

75. Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 74 of the Complaint as though fully set forth herein.

76. The exception request was denied because it did not compare LLKC's per treatment costs to the nationwide median cost per treatment figures.

77. The median cost per treatment figures developed by CMS for purposes of conducting such peer group comparisons are completely unsupported by substantial evidence.

78. The median cost per treatment figures are also inconsistent with the reasonable cost principles specified in the Secretary's regulations.

79. The median cost per treatment figures are invalid because they were not the subject of notice and comment rulemaking as required by the Administrative Procedures Act and the Medicare Act.  5 U.S.C. §553; 42 U.S.C. §1395hh.

80. The median cost per treatment figures are invalid because they were not published in the Federal Register, as required by 5 U.S.C. §552, and 42 U.S.C. §1395hh.

WHEREFORE, Plaintiff prays for judgment as follows:

a.   For an order reversing the Defendant's decision as being legally invalid and/or erroneous;

b.   For an order that the amount requested in the exception application submitted by Plaintiff was automatically approved due to the failure of CMS to communicate its denial within 60 working days as required by 42 U.S.C. §1395rr(b)(7).

c.   For an order that Defendant Secretary make all payments owing to Plaintiff by reason of the Court's order within ninety (90) days of entry of the Court's order;

d.    For interest pursuant to 42 U.S.C. §1395oo(f)(2) or other

applicable authority, and Plaintiff's costs and reasonable attorney's

fees;

e.    For such other and further relief as the Court deems

appropriate.

Dated: October 19, 2015

Respectfully submitted,

/s/

_____
Jeffrey A. Lovitky
Attorney at Law
1776 K Street, N.W.
Suite 800
Washington D.C. 20006
Tel: (202) 429-3393
Fax: (202) 318-4013
Lovitky@aol.com
D.C. Bar Number 404834

ATTORNEY FOR PLAINTIFF